[No. A136679. First Dist., Div. Five. Dec. 15, 2014.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Respondent, v. COBRA SOLUTIONS, INC., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. through VII.

COUNSEL

Gonzalez & Leigh, Law Offices of Whitney Leigh and G. Whitney Leigh for Defendants and Appellants.

Cotchett, Pitre & McCarthy, Nancy L. Fineman and Aron K. Liang for Plaintiff and Respondent.

OPINION

SIMONS, J.—In *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839 [43 Cal.Rptr.3d 771, 135 P.3d 20] (*Cobra I*), our Supreme Court held the entire San Francisco City Attorney's Office (City Attorney's Office) was vicariously disqualified from representing the City and County of San Francisco (City) in this lawsuit against a City contractor, Cobra Solutions,

Inc., and a related entity, Telecon L.T.D., Inc.[1] Following remand to the trial court, the City retained substitute counsel and the case proceeded to trial on the City's suit for breach of contract and related claims and Cobra's counterclaims. The jury denied any relief to Cobra and awarded the City approximately $24,000. In the published portion of this opinion, we discuss Cobra's motion in limine seeking to preclude the City from using at trial any evidence procured with the participation of the City Attorney's Office. We hold Cobra waived this issue by failing to timely raise it. We address Cobra's remaining claims in the unpublished portion of the opinion.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 1998, the City entered into a contract with a joint venture comprised of Cobra and other entities; during the periods relevant here, only Cobra remained a party to the joint venture. Under the contract (the master contract), Cobra was one of a number of prequalified vendors of information technology goods and services to the City as part of the City's "Computer Store." This prequalification program had been established through the City's committee on information technology (Technology Committee) to expedite the procurement of information technology goods and services for City agencies. Use of Computer Store vendors was not mandatory. City departments could choose to get information technology goods and services through a Computer Store vendor or by submitting a request for proposals and soliciting bids from other vendors. A little less than half of the City's information technology purchases were made through Computer Store vendors.

In 1999 and 2000, Cobra submitted five invoices to the City based on invoices submitted to Cobra from one of its subcontractors, Monarch Enterprises (Monarch). Monarch had not performed the work identified in the invoices. Instead, Monarch was a sham corporation run by Marcus Armstrong, the then manager of information technology for a City agency. There was evidence at trial Cobra had done nothing to verify that Monarch had in fact performed the work for which Cobra was billing the City. The City paid Cobra the full amount of the invoices: the amount Cobra owed Monarch for the purportedly performed work plus an additional profit markup for Cobra.

In February 2003, after the City discovered a separate scheme involving Armstrong and a different Computer Store vendor, the City filed the instant

---

[1] Although defendants are distinct entities with somewhat different roles in the factual background, the differences are not relevant for the purposes of our analysis. For convenience, we use "Cobra" to refer to either Cobra Solutions, Inc., Telecon L.T.D., Inc., or both entities.

[2] We deny Cobra's January 15, 2014 request for judicial notice as the requested documents are not relevant to this appeal. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4 [67 Cal.Rptr.3d 330, 169 P.3d 559].)

lawsuit against Armstrong and others. In April, the City amended the complaint to add Cobra as a defendant, alleging breach of contract and tort claims, among others.

Around the time the amended complaint was filed, the City received complaints from subcontractors that Cobra had not paid them for completed work for which the City had paid Cobra. The City requested Cobra submit to an audit pursuant to the master contract.[3] Cobra did not submit to the audit request. In May 2003, the Technology Committee terminated the master contract with Cobra.

Shortly thereafter, Cobra filed a motion to disqualify the City Attorney's Office in the instant litigation. The basis of the motion was that Dennis Herrera, the City Attorney, represented Cobra on matters including City contracts when he was in private practice. When the City Attorney's Office became aware of the conflict, Herrera had personally been screened off from all matters related to Cobra. However, other staff members in the City Attorney's Office continued to work on these matters and represented the City in this litigation. In July 2003, the trial court granted Cobra's motion and ordered the City to retain independent counsel in this lawsuit. The City appealed the order and the trial court stayed trial court proceedings pending appellate review.

Although the litigation was stayed during the appeal, other matters proceeded. First, the City reviewed outstanding invoices from Cobra and determined that the City owed approximately $2.3 million to Cobra for work performed by Cobra's subcontractors. In December 2003, the City filed an interpleader action to determine the lawful distribution of the funds. The interpleader action was eventually resolved through a stipulated order. Second, the City reviewed bids for a new Computer Store contract. In December 2003, the Technology Committee decided not to award Cobra a second master contract.

In June 2006, the California Supreme Court issued an opinion affirming the trial court's disqualification order. (*Cobra I, supra*, 38 Cal.4th 839.) The Supreme Court held an ethical screen is not sufficient protection where, as here, the conflicted attorney is the head of a government law office. (*Id.* at pp. 853–854.) Accordingly, the court held the entire City Attorney's Office

---

[3] The master contract provided: "Contractor agrees to maintain and make available to the City, during regular business hours, accurate books and accounting records relating to its work under this Agreement. Contractor will permit City to audit, examine and make excerpts and transcripts from such books and records, and to make audits of all invoices, materials, payrolls, records or personnel and other data related to all other matters covered by this Agreement . . . ."

was vicariously disqualified from this litigation. (*Id.* at p. 854.) Following the decision, the City retained independent counsel and the litigation recommenced.

Trial began in January 2012. The City contended Cobra breached the master contract by billing the City for work that had not been performed; failing to properly supervise its subcontractor, Monarch; failing to timely pay subcontractors; and refusing to submit to an audit. The City also asserted claims for intentional and negligent misrepresentation and for violation of state and local false claims acts (Gov. Code, § 12650 et seq.; S.F. Admin. Code, § 6.80 et seq.) based on Cobra's invoices for work purportedly performed by Monarch. Cobra counterclaimed for breach of contract and for violation of 42 United States Code section 1983, alleging the City debarred Cobra without due process in connection with the City's decision not to award Cobra a second master contract.

In February, the jury returned verdicts against Cobra on the City's contract claims and claim for intentional misrepresentation. The jury found the City's damages on these claims to be $24,498, equivalent to the amount of Cobra's profit on the Monarch invoices. The jury found Cobra not liable on the City's claims for negligent misrepresentation and for violation of the false claims acts. The jury rejected all of Cobra's counterclaims against the City.

After the jury verdict, the trial court issued a statement of decision on the City's equitable claims against Cobra. The trial court found for the City on its claims under Business and Professions Code section 17200, Government Code section 1090, and unjust enrichment. The trial court awarded the City $24,498 on each of these claims, not to be added to the amount already awarded the City on the legal claims. This appeal followed.

## DISCUSSION

I. *Cobra's Motion in Limine*

A. *Background*

On January 18, 2012, five days before trial was scheduled to start, Cobra filed a motion in limine seeking to preclude the admission of evidence "tainted" by the City Attorney's Office's involvement in matters related to Cobra during the time between the trial court's 2003 order disqualifying the office from representing the City in this litigation and the Supreme Court's 2006 affirmance, after which the City retained independent counsel. Specifically, Cobra pointed to participation by the City Attorney's Office in the City's investigation of unpaid invoices to Cobra for work performed by

Cobra's subcontractors, as well as the City Attorney's Office's representation of the City in the subsequent interpleader action. Cobra sought an order precluding the City from presenting any evidence relying on information compiled by or resulting from the participation of the City Attorney's Office. Cobra noted identification of such "tainted" evidence would be "extremely difficult, if not impossible," because of both "the pervasiveness of the taint" and "the inability of witnesses to remember" events "nearly a decade after the fact."

In its opposition, the City argued the City Attorney's Office's participation in matters related to Cobra after the trial court's 2003 order was limited, and Cobra had failed to prove any evidence was tainted. The City also challenged the timing of Cobra's motion, arguing: "The proper time for Cobra to have brought this motion was in 2006, immediately after the Supreme Court issued its opinion rather than on the eve of trial after [the City] and its private counsel had expended significant resources on this case."

The trial court denied the motion on the ground that, inter alia, it was "untimely in view of the lapse of time." The court stated it might still impose a sanction "for what the defendant characterizes as a violation of" the trial court's order disqualifying the City Attorney's Office after hearing the evidence. In its posttrial statement of decision, the trial court found insufficient evidence to show the City Attorney's Office disobeyed the court order.

B. *Analysis*

The parties have cited no California case addressing motions to exclude evidence tainted by the involvement of disqualified counsel. Instead, Cobra cites decisions from other jurisdictions considering, after an order disqualifying counsel, whether successor counsel can have *access* to disqualified counsel's work product and whether pleadings filed by disqualified counsel should be stricken. (See *First Wisconsin Mortgage Trust v. First Wisconsin Corp.* (7th Cir. 1978) 584 F.2d 201; *In re George* (Tex. 2000) 28 S.W.3d 511 (*George*).)

California cases provide a disqualification motion can be waived if not timely filed. (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 844 [123 Cal.Rptr.3d 498] (*Liberty*); accord, *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 490 [160 Cal.Rptr.3d 216].) "[T]he delay has to be extreme or unreasonable before it operates as a waiver. [Citations.] It has been held that when the party opposing the motion has made a prima facie showing of unreasonable delay causing prejudice, disqualification should not be ordered,

and the burden shifts to the moving party to justify the delay. [Citation.] It has also been held that the prejudice to the opponent must be extreme." (*Liberty, supra,* at p. 845.)

In *George,* the Texas Supreme Court discussed the timeliness of a motion to restrict access to disqualified counsel's work product. The McKool and the Pennington law firms were disqualified from representing a party because attorneys at those firms had previously worked at the firm representing the opposing parties. (*George, supra,* 28 S.W.3d at p. 512.) On the day McKool and Pennington withdrew, the Hartnett firm entered an appearance. (*Ibid.*) Counsel for the opposing parties "immediately notified Hartnett of their position that new counsel should not receive, review or use any of McKool and Pennington's work product. . . . When Hartnett advised that it did not agree, . . . Motions for an Order Prohibiting Turnover of Work Product and Related Material" were filed by the opposing parties. (*Id.* at pp. 512–513.) The Supreme Court concluded, "As a rule, '[a] party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint.' [Citation.] This rule applies equally to motions to restrict access to work product." (*Id.* at p. 513.)[4] We agree with the reasoning in *George*: motions seeking to restrict the use of evidence, work product, or pleadings developed by disqualified counsel must be timely filed.

■ Applying this test, we first find Cobra's delay unreasonable. Cobra did not raise the issue until more than five years after successor counsel was retained.[5] Cobra's only attempt to justify this delay is that it brought the motion "shortly after [the City] disclosed its intent to rely substantially at trial on evidence gathered by the City Attorney in its pretrial disclosures," thereby suggesting it had no earlier notice that the City might use such evidence. But the evidence Cobra submitted with its in limine motion demonstrates it knew well before the City retained independent counsel that the City Attorney's Office was participating in certain City actions regarding Cobra. First, in 2003, following the trial court's disqualification order, the City Attorney's Office and Cobra's counsel corresponded about Cobra's outstanding invoices and payments Cobra owed its subcontractors. From this correspondence, Cobra was aware that the City Attorney's Office was participating in the City's investigation of this matter. Second, the City Attorney's Office filed the

---

[4] *George* rejected the argument that the motion to restrict access should have been filed simultaneously with the disqualification motion. "Access to McKool and Pennington's work product only became a ripe issue once those firms were disqualified. Upon learning that Hartnett intended to seek access to the work product, [the opposing parties] immediately moved to restrict access. On this record, we conclude that no waiver has occurred." (*George, supra,* 28 S.W.3d at p. 513.)

[5] There is no record evidence Cobra informed the City prior to the in limine motion that it would object to the use of any evidence developed with the participation of the City Attorney's Office. Cobra also did not seek any such remedy in its original motion to disqualify.

interpleader action in December 2003—in which Cobra was a party—and continued to represent the City until it was disqualified in that action.[6] Accordingly, at the time of the Supreme Court's decision in 2006, Cobra was well aware the City might use at trial evidence developed with the participation of the City Attorney's Office. (Cf. *Liberty, supra,* 194 Cal.App.4th at p. 846 [finding substantial delay after former client was on "inquiry notice" of attorney's possible knowledge of former client's procedures rendered disqualification motion untimely].) Cobra has provided no reasonable explanation for the more than five-year delay in raising this issue.

We also find the prejudice to the City to be extreme. The in limine motion, related to the use of what Cobra argues would be most or all of the City's evidence, was filed only days before trial. Years had passed since the challenged conduct took place. Cobra itself acknowledged the prejudice in its in limine motion, noting identification of any tainted evidence would be "extremely difficult, if not impossible," in part because of "the inability of witnesses to remember" events "nearly a decade after the fact." Further, the unjustified delay effectively lulled retained counsel into failing to develop evidence unconnected to that developed by the City Attorney's Office.

Accordingly, we affirm the trial court's ruling denying Cobra's in limine motion on the ground that it was untimely.[7]

II.–VII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed as to the City's claims for intentional misrepresentation, negligent misrepresentation, and violation of the false claims acts,

---

[6] At oral argument, Cobra contended it knew only that it had turned over records to the City Attorney's Office but did not know the City Attorney's Office was participating in the audit or review of these records until the deposition of a City auditor, Winnie Woo, shortly before trial. However, in August 2003, the City Attorney's Office wrote Cobra's counsel describing specific inadequacies with certain records provided by Cobra, providing Cobra with notice that the City Attorney's Office was examining the records. Moreover, the City Attorney's Office was involved in the interpleader action based on the outstanding payments that were the subject of the audit. This is ample evidence that Cobra was aware of the City Attorney's Office's involvement in the audit well before the Woo deposition.

[7] Because of this conclusion, we need not address Cobra's related arguments regarding the City's use of purportedly tainted evidence at trial: the court erred in deferring resolution of the issue, the court erred by failing to instruct the jury on purportedly tainted evidence, Cobra should not have been required to prove which evidence was tainted, and the court erred in denying Cobra's motion for a new trial because of the use of purportedly tainted evidence.

* See footnote, *ante,* page 468.

and the matter is remanded with directions to conduct a new trial limited to these claims. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

Jones, P. J., and Bruiniers, J., concurred.